## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JASON CARL KENNEDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13-165C |
| v. ) | (Judge Margaret M. Sweeney) |
| ) | |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S MOTION TO REOPEN REMAND

Pursuant to the Court's May 22, 2018 order, defendant, the United States, respectfully submits this motion to reopen the remand to the United States Navy for the limited purpose of compiling the documentation of the Navy's already-completed calculation of plaintiff Jason C. Kennedy's tuition and benefits owed under the Board for Correction of Naval Records' (BCNR) November 20, 2017 decision.

The United States previously filed these documents with the Court as Volume III of the May 31, 2018 administrative record. They reflect the record of the Navy's administrative decision of the calculation of tuition and benefits owed to Mr. Kennedy. As we explain below, these documents are already properly before the Court as an administrative record of an agency action. However, we file this motion as a precautionary measure in response to Mr. Kennedy's stated position that the documents cannot be before this Court unless this Court reopens the remand.

## FACTUAL BACKGROUND

On January 17, 2017, United States Court of Appeals for the Federal Circuit issued a decision in which it directed this Court to remand this matter to the BCNR for further proceedings, "with instructions that the BCNR promptly consider Mr. Kennedy's case and recommend such further relief for him it deems appropriate." *Kennedy v. United States*, 845 F.3d 1376, 1383-84

(Fed. Cir. 2017). This Court remanded to the BCNR with these instructions on March 27, 2017, suspending this matter until September 27, 2017. ECF No. 75 at 1. Following Mr. Kennedy's request for a continuance of his BCNR hearing, the Court granted our motion to extend the suspension until November 30, 2017. ECF No. 83 at 1.

In its November 20, 2017 decision, the BCNR recommended that Mr. Kennedy receive the balance of his tuition and fees. ECF No. 86 at 13. The BCNR also recommended that the Defense Finance and Accounting Service (DFAS) "complete an audit of [Mr. Kennedy's] records and determine the value of the" tuition, fees, and allowances due to Mr. Kennedy. *Id*. at 14.

On January 3, 2018, Mr. Kennedy requested a suspension of proceedings "pending an audit by the [DFAS] to determine the amount of relief to be provided by the Department of the Navy to [him]." ECF No. 85 at 1. Mr. Kennedy explained that, before he could decide whether to dismiss his claim, he would need to know the results of the audit. *Id*. at 4. This Court granted the request, suspending this case until March 27, 2018. ECF No. 89 at 2. The Court's order added that, "[i]f the DFAS does not complete its audit and determine the amount due to plaintiff prior to March 27, 2018, defendant shall, by that date, file a status report apprising the court of the status of DFAS's audit and suggesting further proceedings." *Id*.

On March 27, 2018, we filed a status report with the Court, explaining that the Naval Service Training Command (NSTC) was undertaking the BCNR's ordered audit, and efforts to complete it were frustrated by Mr. Kennedy's refusal to obtain and to supply to NSTC his George Washington University (GWU) tuition invoices. ECF No. 90 at 2. We thus "respectfully request[ed] that the Court continue the stay to permit Mr. Kennedy to contact the GWU billing office and to request the necessary documentation, and the Navy and DFAS to calculate the compensation once they have received the requested documentation." *Id*.

2

Mr. Kennedy requested, and this Court granted, a status conference, held on April 18, 2018. ECF 93 at 1. During that status conference, Mr. Kennedy stated that he possessed the invoices, but declined to provide them to the Navy. Instead, Mr. Kennedy stated that the remand had terminated, and the parties should enter discovery on damages. This Court ordered the parties to confer on how to proceed. ECF No. 96 at 1.

On April 24, 2018, Mr. Kennedy emailed counsel for the United States a Statement of Account from GWU. ECF No. 99, Ex. A. at 6. The Statement of Account shows that Mr. Kennedy received significant university awards and grants for the semesters in dispute. For example, Mr. Kennedy received more than $17,000 in awards from GWU for the academic year 2006-2007. *Id*. Using this Statement of Account, the NSTC calculated the tuition and fees owed to Mr. Kennedy pursuant to the BCNR's November 20, 2017 decision correcting Mr. Kennedy's military records. The amount is $20,644.25. ECF No. 99 at 2. On May 1, 2018, NSTC notified DFAS of the results of its calculation by letter. *See* ECF No. 99, Ex. B at 1.[1]

On May 2, 2018, counsel for the United States provided Mr. Kennedy, by email, with a copy of the NSTC letter and informed him of the calculation of $20,644.25. ECF No. 99, Ex. A at 4-5. Counsel for the United States requested that Mr. Kennedy provide his position on the matter so that counsel could draft a joint status report for Mr. Kennedy's review. ECF No. 99, Ex. A at 5. Following Mr. Kennedy's request for additional time to consider the calculated amounts, the United States filed an unopposed motion for an extension of time, to and including May, 11, 2018, to submit a joint status report. ECF No. 97. The Court granted that motion. ECF No. 98. After further discussions with the Navy, on May 7, 2018, counsel for the United States provided

---

[1] On May 10, 2018, the NSTC revised its letter to note that Mr. Kennedy's tuition is not taxable. ECF No. 99, Ex. B at 2.

Mr. Kennedy with the United States' revised position on further proceedings in this matter. ECF No. 99, Ex. A at 3.

On May 10, 2018, or the first time, Mr. Kennedy provided counsel for the United States with Mr. Kennedy's position on further proceedings. ECF No. 99, Ex. A at 2-3. During a teleconference which became unproductive when a series of misunderstandings or miscommunications arose, counsel for the United States suggested that all further communication between the parties should be in writing, confirming this with an email. ECF No. 99, Ex. C at 2. After Mr. Kennedy indicated that he would not edit the draft joint status report, on May 11, 2018, we filed a defendant's status report stating the United States' position on how to proceed. In the report, we explain that once DFAS receives the NSTC's calculation, DFAS should be ready to pay Mr. Kennedy $20,644.25 in approximately 30 days. ECF No. 99 at 3.

We proposed a schedule for further proceedings to resolve Mr. Kennedy's damages dispute through judicial review of the administrative process, on cross-motions for judgment upon the administrative record. *Id*. We explained that because this Court previously held that a midshipman's entitlement to pay is statutory in nature, *id*. (citing *Bell v. United States*, 366 U.S. 393, 401 (1961); *Kennedy v. United States*, 124 Fed. Cl. 309, 323-25 (2015), *rev'd in part*, 845 F.3d 1376 (Fed. Cir. 2017); *Kennedy v. United States*, 845 F.3d 1376, 1383 (Fed. Cir. 2017)), the parties can resolve the damages disputes on cross-motions for judgment upon the administrative record. *Id*. at 3-4 (citing *Bateson v. United States*, 48 Fed. Cl. 162, 164 (2000)).

Our report recognized Mr. Kennedy's stated position that, although he agreed that the United States should file an administrative record, he believed that the administrative record cannot include NSTC's calculation of damages because the remand period had expired. *Id*. at 4. We explained, however, that the administrative record would reflect the record of the Navy's

administrative decision ordering the correction of Mr. Kennedy's record, which, in this case, includes the act of correcting the record by paying Mr. Kennedy. *Id*. We added that, to the extent Mr. Kennedy is correct that the end of the remand is a procedural barrier to completing the administrative record, we respectfully requested that the Court reopen the remand period for the limited purpose of compiling the already-completed calculation documents for inclusion in an administrative record. *Id*.

In his status report, Mr. Kennedy disregarded both his own and the United States' requests for a suspension to permit the calculations to be completed. Instead, Mr. Kennedy raised an argument that no Navy calculation had occurred because the remand expired before he provided the Navy with the documents required to complete the calculation. *See* ECF No. 100 at 2.

On May 22, 2018, this Court ordered the United States to file the administrative record by no later than May 31, 2018. ECF No. 103 at 1. The Court's order added that the "parties may file any motions concerning the scope or contents of the administrative record by no later than Monday, July 2, 2018." *Id*.

## ARGUMENT

Volume III of the administrative record – the record of the Navy's tuition and benefits calculation – is properly before this Court. This volume is a record of a Navy administrative decision made in furtherance of the BCNR's recommendation for a correction of Mr. Kennedy's military records. Mr. Kennedy has expressed a desire to challenge that decision, and, accordingly, an administrative record of that decision is required for resolution of that challenge. *See Sharpe v. United States*, 134 Fed. Cl. 805, 813–14 (2017) (reviewing DFAS's recoupment of pay on an administrative record because "'[a]gency action' is not limited to a correction board's decisions; rather, agency action also includes the implementation of that decision and any recommended

relief."). We are unaware of any precedent that precludes the United States from filing an administrative record of a military pay decision, whether that be the accurate calculation of a soldier or sailor's pay or otherwise, simply because the matter is in litigation. Nor are we aware of any precedent that precludes a service branch from making an administrative decision in furtherance of the implementation of a correction board's recommendation on remand. Accordingly, we respectfully suggest that the parties may now proceed to resolving this matter on motions for judgment upon the administrative record.

     Mr. Kennedy's position that this Court is precluded from considering the record of the Navy's calculation is illogical and frustrates the resolution of this matter. In fact, until the Navy specifically requested the GWU documentation, Mr. Kennedy's position was that such a calculation was necessary for further proceedings. *See* ECF No. 85 at 1. His reversal appears to be nothing more than a disingenuous attempt to preclude this Court from considering the effect of his scholarships on his military pay. Nevertheless, if the Court were to agree that a procedural barrier exits to the consideration of the Volume III of the administrative record, we respectfully request that the Court reopen the remand for the limited purpose of accepting the Navy's record of its administrative decision.

     As an initial matter, we note that the United States has a pending request for a continuance of the stay in proceedings to allow for the completion of the calculation of the tuition and benefits owed to Mr. Kennedy. ECF No. 90 at 2. On March 27, 2018, the date upon which Mr. Kennedy contends the remand expired, we filed a status report with the Court, explaining that the NSTC's efforts to complete the calculation were frustrated by Mr. Kennedy's refusal to supply his GWU tuition invoices. *Id*. We "respectfully request[ed] that the Court continue the stay to permit Mr. Kennedy to contact the GWU billing office and to request the necessary documentation, and

the Navy and DFAS to calculate the compensation once they have received the requested documentation." *Id*.  The NSTC completed the calculation on May 10, 2018, during the pendency of this request.

Moreover, an administrative record of the calculation of tuition and fees is necessary for resolution of this military pay matter, because a midshipman's entitlement to pay is statutory in nature, and this Court reviews such payments under the Administrative Procedures Act (APA) standards.  *See Bell*, 366 U.S. at 401; *Kennedy*, 124 Fed. Cl. at 323-25 (2015), *rev'd in part*, 845 F.3d 1376; *Kennedy*, 845 F.3d at 1383; *Bateson*, 48 Fed. Cl. at 164.

As this Court recently recognized, "[m]ilitary pay cases involving decisions of a military correction board and a service member's subsequent entitlement to appropriate monetary compensation under the U.S. Code are reviewed on the administrative record under the same standard as any other agency action." *Sharpe*, 134 Fed. Cl. at 813–14 (citing *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006); *Martinez v. United States*, 333 F.3d 1295, 1314–15 (Fed. Cir. 2003)).  *See also Kennedy*, 124 Fed. Cl. at 323-25, *rev'd in part*, 845 F.3d 1376 (finding that Mr. Kennedy's claim was statutory); *Kennedy*, 845 F.3d at 1383 (recognizing that Mr. Kennedy did not appeal this Court's finding that his claim was statutory in nature).  Moreover, "'[a]gency action' is not limited to a correction board's decisions; rather, agency action also includes the implementation of that decision and any recommended relief." *Sharpe*, 134 Fed. Cl. at 814 (citing *Laningham v. United States*, 30 Fed. Cl. 296, 304 (1994)).  "[F]inal and binding decisions made by the General Counsel and [Assistant Secretary], in furtherance of processing plaintiff's claims based upon a resolution of the BCNR, are also given the same weight as resolutions of the BCNR." *Laningham*, 30 Fed. Cl. at 304.  "Together, they compromise the 'administrative decision' of the defendant[.]" *Id*.

In *Sharpe*, a former service member challenged DFAS's calculation of damages following a BCNR decision correcting his military record. 134 Fed. Cl. at 814. The service member argued that summary judgment, rather than motions for judgment upon the administrative record, was the appropriate method to resolve the matter because, in his opinion, the agency action ended upon the BCNR's decision and, thus, did not include DFAS's calculations. *Id*. This Court disagreed, and held "[t]he proper agency here is the Navy as a whole, and the proper agency action includes both the BCNR decision and the implementation of that decision by DFAS[.]" *Id*. Accordingly, "the Court f[ound] that judgment on the administrative record [wa]s the appropriate procedural vehicle for resolving this case and . . . review[ed] the Navy's decision under the same standard as any other agency action[,]" the APA standard. *Id*.

In this case, as in *Sharpe*, the Navy calculated Mr. Kennedy's tuition and benefits as part of an administrative decision in furtherance of the BCNR's prior recommendation of a correction to Mr. Kennedy's military records. The Court reviews this determination of Mr. Kennedy's correct military pay under the arbitrary and capricious standard on an administrative record. *See id*.; *Toon v. United States*, 96 Fed. Cl. 288, 302 (2010) (in an alternative holding, reviewing on an administrative record an argument that DFAS incorrectly recouped retirement benefits).

Mr. Kennedy's position otherwise is an inappropriate attempt to have this Court second-guess the Navy and determine his military pay *de novo*. Mr. Kennedy appears to argue that this Court should make a damages determination based upon the reasonableness of the information that he, and only he, offers to the Court. We are unaware of any precedent that supports a *de novo* review of a sailor or soldier's military pay. In fact, as we explain above, Mr. Kennedy's position that this Court is precluded from considering the record of the Navy's calculation is incorrect and frustrates the proper resolution of this matter. In fact, until the Navy specifically requested the

GWU documentation, Mr. Kennedy's position was that the calculation was necessary for further proceedings. His reversal appears to be nothing more than an inappropriate attempt to preclude the Court from considering the effect of his scholarships on his military pay.

Further, to the extent that there is a procedural flaw, it was caused by Mr. Kennedy. The Navy's calculation of Mr. Kennedy's tuition and fees was not complete prior to March 27, 2018 because Mr. Kennedy refused to comply with the NSTC's reasonable requests for documentation of his tuition payments. Mr. Kennedy now seeks to parley his refusal to assist in the remand process into an argument that, because the NSTC could not complete the calculation process before March 27, 2018, the Navy loses the opportunity to present a subsequent calculation at a later date, and that the Court must now review his claim *de novo*. Mr. Kennedy's position would encourage servicemembers not to assist in the correction of their military records – as Mr. Kennedy did – in order to preclude their service branch from reaching administrative decisions in favor of a court considering the claim *de novo*. That would be contrary to well-settled law governing these proceedings.

## CONCLUSION

For these reasons, we respectfully request that if the Court were to determine that further remand is required for Volume III of the administrative record to properly be before the Court, the Court reopen the remand for that limited purpose.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

9

|  |  |
|---|---|
| OF COUNSEL: | s/Reginald T. Blades, Jr.<br>REGINALD T. BLADES, JR.<br>Assistant Director |
| LCDR Jonathan E. Dowling<br>JAGC, USN<br>Office of the Judge Advocate General<br>General Litigation Division<br>U.S. Department of the Navy<br>Washington Navy Yard, D.C. | s/William J. Grimaldi<br>WILLIAM J. GRIMALDI<br>Senior Trial Counsel<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C.  20044<br>Tel:  (202) 616-0471<br>Fax:  (202) 514-8624<br>william.j.grimaldi@usdoj.gov |
| July 2, 2018 | Attorneys for Defendant |